## CARRIE S. BROWN, Respondent, v. SUPREME LODGE KNIGHTS OF PYTHIAS, Appellant.

### St. Louis Court of Appeals, March 27, 1900.

1. **Insurance Policy:** BY-LAWS OF INSURANCE ORDER CONSTRUED: DEATH RESULTING FROM VIOLATION OF CRIMINAL LAW: FORFEITURE. The meaning of the by-law adopted by an insurance order, that should a member holding a certificate in the order come to his death in consequence of a violation of any criminal law, ought only to be confined to a case where a member loses his life in the commission of a felony.

2. ——: ——: ——. Neither should it be applied where he suffers death by reason of a misdemeanor in the fullest sense of the word, but it should be construed to embrace any act of the insured, which might be denominated a crime, and if his offense was of that character, whether it was a felony or not, and he lost his life in consequence of it, and under circumstances which made the killing justifiable homicide, then a forfeiture ought to be declared.

3. ——: ——: ——: EVIDENCE. In the case at bar the undisputed evidence shows that the deceased struck Rogers with his hand; that the blow was struck in a well-lighted room; that the parties clinched; that Rogers threw deceased down, and that while they were down Rogers inflicted injuries on the head of deceased, the effect of which is supposed to have caused his death. And it can not be supposed that such a case as these facts present, was within the contemplation of the contracting parties.

4. ——: ——: ——: CONSENT OF THE INSURED; UNREASONABLE BY-LAW. In the case at bar the by-law as applicable to existing contracts of insurance was unreasonable, and inapplicable, for to apply it would be to materially change the contract without the consent of the insured.

Appeal from the St. Francois Circuit Court.—*Hon. James D. Fox,* Judge.

AFFIRMED.

*Warwick M. Hough* for appellant.

(1) The agreement in the application and in the certificate of membership, or policy sued on, that the same was subject to a full compliance on the part of the deceased with all the laws governing the endowment rank, then in force, or that might thereafter be enacted, is valid and binding. Daughty v. Knights of Pythias, 48 La. Ann. 1203; Supreme Lodge v. LaMalta, 95 Tenn. 157; Supreme Commandery v. Ainsworth, 71 Ala. 436; Toomey v. Supreme Lodge, 74 Mo. App. 517; Supreme Lodge v. Stein, 75 Miss. 107; Dornes v. Supreme Lodge, 75 Miss. 466; Supreme Lodge v. Kutscher, 179 Ill. 340; Supreme Lodge v. Trebbe, 179 Ill.

Brown v. Supreme Lodge K. of P.

348. (2) The law of the endowment rank limiting the amount of recovery on the policy, in the event the death of the assured should occur, or be caused or superinduced, by, or be in consequence of, a violation, or attempted violation, on the part of such assured of any criminal law, is valid and binding. Mutual Life Ins. Co. v. Stibbe, 46 Md. 302; Aetna Life Ins. Co. v. Davy, 123 U. S. 739; Aetna Life Ins. Co. v. Davy, 38 Fed. Rep. 650; Aetna Life Ins. Co. v. Davy, 40 Fed. Rep. 911; McGlother v. Provident Mut. Co., 89 Fed. Rep. 685; Adkins v. Columbia Life Ins. Co., 70 Mo. 27; Haynie v. K. T. M. I. Co., 139 Mo. 416; Sparks v. K. T. M. I. Co., 61 Mo. App. 109. (3) In the agreed statement of facts, read in evidence by the plaintiff, it is stipulated, "that on the fifteenth day of July, 1897, at the time of the death of the said William C. Brown, and for a long time prior thereto, there was a law of the order in force governing the endowment rank of this defendant, to the effect that if the death of any member of the endowment rank should occur, or be caused or superinduced, by, or be in consequence of, a violation, or attempted violation, on the part of such member of any criminal law, then the amount to be paid upon such member's certificate shall be a sum only in proportion to the whole amount, as the matured life expectancy is to the entire expectancy at date of admission to the endowment rank. The expectation of life based upon the American experience table of mortality in force at the time of such death to govern." In the agreed statement said sum was stipulated to be $585.50, which sum was tendered to the plaintiff, and being refused, the tender was continued by payment of the same into the registry of the court after suit brought. (4) In the agreed statement of facts, read in evidence by the plaintiff, it is stipulated, "that the death of the said William C. Brown was caused, or superinduced, by a fractured skull, and other injuries, received by said Brown

at the hands of one John Rodgers, in the city of St. Louis, Missouri, during a personal conflict between said Rodgers and said Brown on or about the fifteenth day of July, A. D. 1897." The act of William C. Brown in bringing on the conflict between himself and Rodgers by striking Rodgers, was a violation of the criminal law of this State, and was a misdemeanor. See Revised Statutes 1889, sections 3492 and 3975. (5) Nor need such violation of law constitute a felony. Wolf v. Connecticut Mutual, 5 Mo. App. 236; Bacon on Benefit Societies [Ed. of 1894], sec. 339.

*D. L. Rivers* for respondent.

(1) The rule in actions at law is that the appellate court will not reverse on the weight of evidence. Brown v. Railroad, 50 Mo. 461; Bay v. Kremp, 113 Mo. 552. It has no constitutional power to pass on the weight of conflicting evidence in such actions. Blanton v. Dold, 109 Mo. 64. (2) The limit of the appellate court's duty is to vacate verdicts where they bear the unmistakable stamp of bias or partiality. O'Hara v. Globe Iron Co., 66 Mo. App. 53. (3) The rule applies when the evidence warrants either the finding or denial of an inference of fact upon which the result of the trial depends. Degge v. Am. Ex. Co., 64 Mo. App. 102. (4) The appellate court can not reverse merely because the verdict is not altogether to its liking. It must defer somewhat to the finding of the jury and leave it to the trial judge to say if the preponderance is so strong against it that the verdict can not stand. Davis v. Railroad, 46 Mo. App. 180. It is not sufficient that there is an insufficiency of evidence. This court will not reverse unless satisfied that the evidence does not even tend to establish the facts on which the finding and judgment are based. Moore v. Railroad, 73 Mo. App. 438. It is not sufficient that the finding may be con-

trary to the uncontradicted testimony of several witnesses. Roos v. Clark, 14 Mo. App. 594. (5) That this case was tried by the court on depositions, does not change the rule: "In actions at law, the finding of the facts by the trial judge are as binding on the appellate court as are the findings of facts by a jury; and it makes no difference," says the supreme court, "that the evidence was heard by one judge and the trial had on a transcript thereof before another judge." Handlan v. McManus, 100 Mo. 124. The presumption is that the court in weighing the evidence was governed by correct principles of law. Hence it is held that the same rules of strictness are not enforced in appeals where the trial was had by the court as when the trial was before a jury. Moffitt v. Hereford, 132 Mo. 522; citing McCollough v. Ins. Co., 113 Mo. 616. (6) We do not say that if one provoked by some bitter insult should strike another with his open hand and be shot down in the act, which is the case suggested by Judge Scott (Harper v. Ins. Co., 19 Mo. 506), he would incur thereby the forfeiture of a policy containing such a clause as that before us. And what we have said does not contradict the view that in such policies the insurer contemplates and is not supposed to intend to include the risks arising from some sudden outburst of passion such as ordinary men are subject to, but we say that the violation of law spoken of is intended to be not a mere trespass, but what may fairly be denominated a crime, and when such an offense is committed, whether felony or not, it will avoid the policy if death ensues as the probable consequence of an act under circumstances which make the killing of the assured justifiable homicide." Harper v. Ins. Co., *supra.*

BIGGS, J.—The plaintiff is the widow of W. C. Brown. She sues on a benefit certificate issued by the defendant order on the life of her husband for the sum of two thousand

dollars. The certificate was issued in 1889. In 1896 the defendant adopted a by-law that if the death of a member of the order holding a certificate of insurance "shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel or at the hands of justice, or in violation of any criminal law, then the amount to be paid upon such member's certificate shall be a sum only in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission to the endowment rank, the expectation of life based upon the American experience table of mortality in force at the time of such death to govern." The defense was that the death of Brown resulted from an injustifiable assault made by him on one Rodgers, and that under the aforesaid by-law and the contract of insurance the defendant was only indebted to plaintiff on account of the certificate in the sum of $585.50, which amount it tendered into court. There was a trial before the court without a jury. There was evidence tending to prove that the deceased and Rodgers engaged in a fist fight; that the deceased was the aggressor, and that the injuries he received in the fight resulted in his death about twelve hours afterwards. At the conclusion of the evidence the court gave the following instruction at the request of the defendant, to wit:

"The court declares the law to be that if it finds from the evidence in this case that William C. Brown assaulted John Rodgers without provocation, and that during such assault he received wounds at the hands of said Rodgers, from which he died, then they must find for the plaintiff in the sum only of $585.50; and in this connection the court further declares the law to be that mere words never justify an assault."

The plaintiff asked no instructions. The judgment was for the full amount of the policy. The defendant appealed, and its counsel urges that all of the evidence in the case tends to prove that the assault by Brown on Ródgers was without provocation.

Under our views of the law we need not discuss the evidence as applicable to the instruction given by the court. In our opinion the evidence failed to establish any defense to the action. In the case of Harper v. Phoenix Ins. Co., 19 Mo. 506, one of the conditions of the policy was that if the insured "shall die in the known violation of a law of the state," then the policy should be void. In interpreting this clause in the contract the court applied the maxim *noscitur sociis*, and held that it should be construed only to extend to instances in which the party died in the commission of a felony. That case was properly decided under the rule invoked, for in the other clauses of the contract which stipulated for the avoidance of the policy no offense below the grade of a felony was mentioned. Thus in one of the clauses it was provided that "if the party shall die by the hands of justice," the policy should be forfeited. If the forfeiting clauses of the policy in the case in hand were the same the liability of the defendant under the foregoing decision would be beyond dispute, for the deceased was only guilty of striking Rodgers with his hand, which was a misdemeanor. But the forfeiting clause here under consideration is found in company with another, which provides that if the death of Brown "shall be caused or superinduced by the use of intoxicating liquors, etc.," which offense is neither a felony nor misdemeanor. This renders the reasoning in the Harper case inapplicable. Being therefore free to dispose of the case according to our conceptions of the law we are inclined to adopt the reasoning of this court in the case of Wolff v. Ins. Co., 5 Mo. App. 236. Under that decision

the meaning of the clause here ought not to be confined to a case where a member loses his life in the commission of a felony. Neither should it be applied where he suffers death by reason of a misdemeanor in the fullest sense of that word, but it should be construed to embrace any act of the insured which might be denominated a crime, and if his offense was of that character, whether it was a felony or not, and he lost his life in consequence of it and under circumstances which made the killing justifiable homicide, then a forfeiture ought to be declared. The facts of this case and of the Wolff case, *supra*, illustrate our meaning. In the latter case the insured attacked his adversary in the dark when the latter was not anticipating trouble. He seized him by the throat and choked him in a violent manner, and in attempting to defend himself his victim mortally wounded him. As was justly said in substance by this court, no man in this western country can commit such an act of violence under such circumstances without taking his life in his own hands. Yet the offense of the deceased was only a misdemeanor, but the assault was of such a character and was committed under conditions which rendered the killing justifiable homicide. This certainly presented a case within the meaning of the forfeiting clause of the contract. It was a risk which the insurance company did not assume but contracted against. In the case at bar the facts are very different. The undisputed evidence shows that Brown struck Rodgers with his hand; that the blow was struck in a well-lighted room; that the parties clinched; that Rodgers threw Brown, and that while they were down Rodgers inflicted injuries on Brown's head the effects of which is supposed to have caused his death. It can not be supposed that such a case as these facts present was within the contemplation of the contracting parties. As was said by Judge Scott in the Harper case, *supra*, "if one assaults another with his open hand, and is thereupon in-

stantly shot down, he does not die in the known violation of a law." . So we hold that the question of the lack of provocation for the assault is immaterial, for the judgment is for the right party regardless of it.

Again, the judgment is for the right party for the further reason that Brown's contract of insurance was not affected by the subsequent by-law. The new law as applicable to existing contracts of insurance is unreasonable, and hence inapplicable, for to apply it would be to materially change the contract without the consent of the insured. We have decided the identical question at this term of the court in the case of Smith against this defendant.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.